Filed 7/14/15  P. v. Jimenez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NEFTALI JIMENEZ III,<br><br>    Defendant and Appellant. | E060060<br><br>(Super.Ct.No. RIF1304591)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Jerry E. Johnson, Judge. (Retired judge of the Los Angeles Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Peter Quon, William M.

Wood, and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Neftali Jimenez III got upset with some gardeners because he felt their lawnmower was too loud while he was trying to make a phone call. After trying but failing to attack the gardeners, who defended themselves with their tools, defendant relieved his feelings by sucker-punching and beating up a bystander who happened to be waiting at a nearby bus stop.

A jury found defendant guilty of assault by means of force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4)), with an enhancement for the personal infliction of great bodily injury (Pen. Code, § 12022.7, subd. (a)). He admitted one "strike" prior allegation (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and one 1-year prior prison term allegation (Pen. Code, § 667.5, subd. (b)). As a result, he was sentenced to a total of 10 years in prison, along with the usual fines and fees.

Defendant contends:

1. The trial court erred by failing to instruct on the lesser included offense of simple assault.

2. The prosecutor committed misconduct in closing argument by misstating the law and by appealing to passion and prejudice, and defendant's trial counsel rendered ineffective assistance by failing to object.

We find no prejudicial error. Hence, we will affirm.

# I

## FACTUAL BACKGROUND

Defendant was using a pay phone at a gas station.  Meanwhile, three men started doing some gardening work at the gas station.

Defendant became annoyed because their lawnmower was too loud.  He moved toward them aggressively, but one of them fended him off with the lawn mower and another one with a hoe.  Defendant tried unsuccessfully to pull the hoe away from them.  He walked over to the gas station attendant and asked him "for something heavy to hit [them] with," but the attendant refused.

One Roberto Mayo Espinoza was sitting at a nearby bus stop, minding his own business.  Defendant walked over to Espinoza and punched him in the face.  Espinoza was knocked down.  Defendant hit him some three to seven more times in the face and head, using both fists and, at least once, his knee.  Defendant kept saying, "[Y]ou don't do that."  When someone in a car stopped and yelled, defendant desisted and walked off.

Espinoza sustained a cut two centimeters long on his right eyebrow; it required four stitches.  It was "deeper than superficial[,] probably into the muscle."  He also had bruises and swelling on his scalp, face, and right forearm.  His treating physician

3

considered his injuries "moderate." At the time of trial, about four months later, he was still experiencing pain in his forehead.[1]

Defendant testified that he put up his hand and told the gardeners, "I'm on the fucking phone." They just smirked at him, then "flinched" the lawnmower and the hoe toward him, "using [them] as weapons . . . ." He was running away and the three gardeners were chasing him when Espinoza "gets in front of [him] mad dogging [him]." Defendant said, "[D]on't do that," then "cracked" Espinoza three or four times. At trial, he volunteered, "I . . . really hate gardeners now."

II

## FAILURE TO INSTRUCT ON SIMPLE ASSAULT

## AS A LESSER INCLUDED OFFENSE

Defendant contends that the trial court erred by failing to instruct on the lesser included offense of simple assault.

Simple assault is a lesser included offense of assault by means of force likely to cause great bodily injury. (*People v. Yeats* (1977) 66 Cal.App.3d 874, 879.)

"A trial court must instruct on all lesser included offenses supported by substantial evidence. [Citations.] The duty applies whenever there is evidence in the record from which a reasonable jury could conclude the defendant is guilty of the lesser, but not the

---

[1] Defendant claims Espinoza "was . . . impeached with prior statements in which he said he had no further pain." Actually, Espinoza did not remember making any such statements, and no such statements were ever introduced.

4

greater, offense. [Citations.]" (*People v. Duff* (2014) 58 Cal.4th 527, 561.) "Thus, 'a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' [Citation.]" (*People v. Smith* (2013) 57 Cal.4th 232, 240.)

In a single-sentence argument, defendant asserts that the failure to instruct on the lesser included offense "violated [his] Sixth Amendment right to a jury trial." He does not cite any authority for this proposition. If only out of an excess of caution, we note that "'[t]here is no federal constitutional right of a defendant to compel the giving of lesser-related-offense instructions. [Citation.]' [Citation.]" (*People v. Foster* (2010) 50 Cal.4th 1301, 1344.) Thus, "[t]he failure to instruct on a lesser included offense in a noncapital case does not require reversal 'unless an examination of the entire record establishes a reasonable probability that the error affected the outcome.' [Citation.]" (*People v. Thomas* (2012) 53 Cal.4th 771, 814, fn. omitted.)

We may assume — without deciding — that the trial court did err. Even if so, the error was plainly harmless. The jury found a personal infliction of great bodily injury enhancement allegation true. This demonstrates that, even if it had been instructed on simple assault, it still would have found that defendant used force likely to cause great bodily injury.

5

Defendant argues that the enhancement finding was "tainted" by the asserted instructional error. *Au contraire*. Failure to instruct on a lesser included offense prejudices a defendant — if at all — by forcing the jury to make an all-or-nothing choice between conviction of the greater offense, on the one hand, or complete acquittal, on the other. (*People v. Banks* (2014) 59 Cal.4th 1113, 1159-1160.) In this case, however, the jury had three choices. It could find defendant: (1) guilty of the greater offense, with the enhancement; (2) guilty of the greater offense, without the enhancement; or (3) not guilty. If it had gone with choice (2), there might be some room for doubt as to whether it felt pressure to find defendant guilty of the greater offense, despite being unable to find that he did, in fact, inflict great bodily injury. However, because it actually went with choice (1), we can be sure that it actually found that defendant used force likely to cause great bodily injury.

Finally, defendant also argues that the verdict on the enhancement was tainted by prosecutorial misconduct. We will reject his prosecutorial misconduct claim in part III, *post*.

For the reasons stated, we conclude that the failure to instruct on simple assault, if error at all, was harmless.

III

FAILURE TO OBJECT TO

PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT

Defendant contends that his trial counsel rendered ineffective assistance by failing to object to prosecutorial misconduct in closing argument.

A.    *General Legal Principles*.

"'[T]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.  A more apt description of the transgression is prosecutorial error.'  [Citation.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.)

"'"'A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process.  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.'  [Citation.]  When a claim of misconduct is based on the prosecutor's comments before the jury, as all of defendant's claims are, '"the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion."'  [Citation.]  To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument.  [Citation.]"

7

[Citation.]  A failure to timely object and request an admonition will be excused if doing either would have been futile, or if an admonition would not have cured the harm.' [Citation.]"  (*People v. Adams* (2014) 60 Cal.4th 541, 568-569.)

"When challenging a conviction on grounds of ineffective assistance, . . . the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms.  Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. . . .  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

B.    *Misstating the Law*.

First, defendant contends that the prosecutor committed misconduct by misstating the law.

8

1. *Additional factual and procedural background.*

In closing argument, the prosecutor stated:

"So basically the defendant is charged with just one count, and it is assault likely to cause great bodily injury. So the charge that he is charged with is dealing with the application of force, . . . whether the application is likely to cause great bodily injury. It doesn't have to cause it.

"For example, the defendant could use his fist, could use a stick, could use whatever he wants, swing it and miss it at the person and still be guilty of assault likely to cause great bodily injury.

"So that is why we have that separate allegation. It's not a separate count, but a separate allegation of great bodily injury because here, there was significant and substantial injury inflicted upon the victim. So that is the count. And that is the allegation that you have to find the defendant guilty of."

She also stated:

"[The s]econd element is that the force used was likely to cause great bodily injury. And, again, that is why a separate allegation of great bodily injury is also charged because it only needs to be force that is likely to cause it, not that it actually caused it."

Finally, she stated:

"There was an assault likely to produce great bodily injury. Because let's say we ended up with the same case, with the same testimony, and the defendant missed every time, . . . that is still assault likely to cause great bodily injury when the defendant is going

at him, whether he misses or not.  But in this situation, Defendant does not miss, makes contact with Roberto Espinoza every single time, and so there is great bodily injury."

Defense counsel did not object to any of these remarks.

2.	*Analysis*.

"[I]t is misconduct for a prosecutor, during argument, to misstate the law [citation] . . . ." (*People v. Whalen* (2013) 56 Cal.4th 1, 77.)  Here, according to defendant, by noting that the charged crime did not require any injury, and by contrasting the charged crime with the enhancement allegation, the prosecutor improperly suggested that the enhancement allegation could be satisfied by any injury at all, no matter how minor.

We see no reasonable likelihood that that is how the jury understood the prosecutor's remarks.  She correctly characterized the enhancement as "a separate allegation of *great bodily injury* . . . ."  (Italics added.)  She explained that it had been alleged "because here, there was significant and substantial injury inflicted upon the victim."  She compared the offense to the enhancement simply to make the point that the offense did not require any actual injury; as defendant concedes, that was correct.

Defendant places great weight on the prosecutor's statement, "So that is why we have a separate allegation."  Specifically, he argues:  "The critical word in these statements is 'so.'"  The prosecutor, however, habitually started sentences with "So."  In the first three paragraphs quoted above, she did this four times.  Moreover, she started

10

each of the next four paragraphs with "So."**2**  Thus, the jury would have understood that

she was using "so" as a transition word, like "next" or "also" (and perhaps merely as a

gap-filler, like "um"); she was not using it to indicate a strict logical or causal connection.

Later in her argument, the prosecutor made it clear that the enhancement required

more than just any injury at all:  "Great bodily injury . . . simply means that it's significant

or substantial physical injury.  It's an injury that is greater than minor or moderate harm."

"The victim testified that . . . he had to get stitches because of those injuries.  [¶]  And in

fact the doctor confirmed he had to get stitches.  He said the laceration was deep enough

for it to require suturing, medical attention.  Wasn't simply a scrape.  Wasn't just minor.

He got contusion of the left eye.  He got swelling of the right forehead.  He got swelling

of the right arm. . . .  [¶]  That, ladies and gentlemen, is more than minor or moderate. . . .

[¶]  Legally, that is great bodily injury."

Because the prosecutor did not misstate the law, defense counsel did not render

ineffective assistance by failing to object.

C.    *Appeal to Passion and Prejudice*.

Defendant also contends that the prosecutor committed misconduct by appealing to

passion and prejudice.

---

**2**    (1) "So let's go into what the elements are."  (2) "So basically there are five
elements to assault likely to cause great bodily injury."  (3) "So application of force is
actually also explained in the jury instructions."  (4) "So if you find someone tapping you
on the shoulder or pushing you, it's harmful or offensive, that is what application of force
is."

1. *Additional factual and procedural background.*

In closing argument, the prosecutor stated:

"And tell the defendant that if he's placed in that same situation again, he can't act in that same manner. Tell him that when you're in that same situation again, don't do what you did. Tell him that by telling him what he did on April 19th is wrong, by finding him guilty . . . ."

In her rebuttal argument, she stated:

"It's like giving a license. Am I going to give this so-called license of self-defense? Given the exact same factual situation, are you going to issue any person in the defendant's shoe [*sic*] the license of self-defense, allowing him, saying that what you did was justifiable?"

Defense counsel did not object to any of these remarks.

2. *Analysis.*

"'It is, of course, improper to make arguments to the jury that give it the impression that "emotion may reign over reason," and to present "irrelevant information or inflammatory rhetoric that diverts the jury's attention from its proper role, or invites an irrational, purely subjective response." [Citation.]' [Citation.]" (*People v. Linton* (2013) 56 Cal.4th 1146, 1210.) However, "'[a] prosecutor is allowed to make vigorous arguments and may even use such epithets as are warranted by the evidence, as long as these arguments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury.' [Citations.]" (*People v. Pearson* (2013) 56 Cal.4th 393, 441.)

Some courts have criticized prosecutorial argument that asks the jury to "send a message to the community." (E.g., *United States v. Lawrence* (6th Cir. 2013) 735 F.3d 385, 432-433.) They reason that: "A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future law breaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear." (*Ibid.*)

Here, however, the prosecutor asked the jury to send a message, not to the community, but to defendant himself. This posed no similar threat that defendant would be convicted without regard to his own guilt or innocence. It did not place on defendant the burden of ameliorating society's woes. Thus, it asked the jury to find defendant guilty if, and only if, it concluded that he was, in fact, guilty. This was not improper. (See *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 305-306 [argument asking jury to "send a message" to civil defendant "was, in context, less a plea for punitive damages than a plea for a verdict of liability."].)

Likewise, the prosecutor's "license" argument, while not limited exclusively to defendant, was limited to a "person in the defendant's shoe[s]" — a person in the "exact same factual situation." Thus, it was nothing more or less than an argument that the facts here did not satisfy the legal requirements of self-defense. This was fair comment on the

13

evidence that, even assuming defendant was afraid of the gardeners, he was not justified in attacking a bystander. (See *People v. Brady* (2010) 50 Cal.4th 547, 584-585 [not prosecutorial misconduct to argue, "This is a case where society cries out for the death penalty. As jurors, you are . . . the conscience of society."].)

Defendant relies on cases in which: (1) the prosecutor appealed to jury's pecuniary interest by arguing that a person who lies or cheats on his taxes "just increases the burden that you and I have" (*People v. Smith* (1984) 155 Cal.App.3d 1103, 1182; (2) the prosecutor said it is solely up to juries, not police or prosecutors, to enforce the law (*People v. Turner* (1983) 145 Cal.App.3d 658, 673-674, disapproved on other grounds in *People v. Newman* (1999) 21 Cal.4th 413, 422–423, fn. 6 and *People v. Majors* (1998) 18 Cal.4th 385, 411); and (3) the prosecutor referred to a newspaper article in which the county sheriff had opined that the legislature, juries and the parole system were all too lenient (*People v. Purvis* (1963) 60 Cal.2d 323, 333-342, disapproved on other grounds in *People v. Morse* (1964) 60 Cal.2d 631, 637, fn. 2, 648-649). Needless to say, nothing equivalent happened here.

Finally, even assuming the challenged remarks did invoke passion and prejudice so as to constitute misconduct, there is no reason to believe that defense counsel's failure to object was prejudicial. Defendant's self-defense claim was extremely weak. Three witnesses — the victim himself, an unrelated prosecution eyewitness, and even a defense eyewitness — all testified that the victim was simply waiting for a bus when defendant

14

attacked him.**3** The defense eyewitness also specifically testified that none of the gardeners were chasing defendant.

Defendant was the only person who testified that the victim could be viewed as threatening him, and his testimony was extremely unconvincing. He claimed he thought the victim was one of the gardeners because he was carrying a leaf blower on his back (or a backpack that defendant mistook for a leaf blower). There was no other evidence of this. Defendant sounded rehearsed, as when he testified:

"Q But you didn't get hit; they flinched at you?

"A I didn't get hit. It was pretty much a threat. It could put a person in fear. It gives reasonable doubt. It gives doubt. Would the person be in fear or not, that is more than reasonable doubt for me to be in fear. The imminent danger is there beyond a reasonable doubt."

Defendant also affirmatively assisted the prosecution by volunteering that he had committed another assault while in jail: "Some dude grabbed my ass, and I cracked him."

Defendant argues that the challenged remarks were prejudicial because "the question of whether the injuries constituted great bodily injury was a very close one." The remarks, however, went to whether defendant could claim self-defense, and thus to whether he was guilty of assault at all. They had no bearing on the great bodily injury issue.

---

**3** Only one of the three gardeners testified. He saw defendant when he was already punching Espinoza at the bus stop, but he did not see how the punching started.

We therefore conclude that, even if defense counsel had objected, the jury's verdict would have been the same.

## IV

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

KING
J.